Filed 7/22/14  P. v. Perry CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANK ENRICO PERRY,<br><br>    Defendant and Appellant. | F066777<br><br>(Super. Ct. No. CRL007937)<br><br><br>**OPINION** |

### THE COURT[1]

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti, Judge.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[1]Before Cornell, Acting P.J., Poochigian, J., and Detjen, J.

## INTRODUCTION

Frank Enrico Perry, appellant, contends the trial court reduced the prosecution's burden of proof in its instructions to the jury on two counts of making a criminal threat (Pen. Code, § 422)[2] and that the trial court erred in failing to give the unanimity instruction. We reject these contentions and affirm the judgment.

On August 14, 2012, appellant was charged in an information with making a criminal threat to Denise Gutierrez-Medina (§ 422, count 1), making a criminal threat to Lucero P. (§ 422, count 2), being a felon in possession of ammunition (§ 30305, subd. (a)(1), count 3), and being a felon in possession of a firearm (§ 29800, subd. (a)(1), count 4). The information also alleged a prior prison term enhancement (§ 667.5, subd. (b).) At the conclusion of a jury trial on December 17, 2012, appellant was found guilty of all four counts. In a bifurcated proceeding, the trial court found the enhancement true.

The trial court sentenced appellant to prison for three years on count 1. The court sentenced appellant to consecutive terms of eight months (one-third the midterm of two years) on counts 2, 3, and 4. The court sentenced appellant to a consecutive term of one year for the prior prison term enhancement. Appellant's total prison term is six years with presentence custody credits of 634 days.

## FACTS

### *Offense*

Denise Gutierrez-Medina testified that she lived in a ranch house in Merced County. She understands only a little English and some curse words. Appellant lived in a trailer on the same property and in front of the Gutierrez-Medina home. Appellant had a wheelchair and used crutches and a cane to walk. At first, Gutierrez-Medina's family got along with appellant.

---

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

2.

The relationship became strained after the owner of the ranch asked appellant to leave. Appellant dumped trash into a nearby ditch, would drive by Gutierrez-Medina's daughter very fast as she came home from school, and would curse at the Gutierrez-Medina family. On one occasion, Gutierrez-Medina found bullet holes in her truck.

On March 7, 2012, Gutierrez-Medina was feeding some animals with her daughter Lucero P., who was seven years old. Lucero became upset because appellant was standing outside his trailer and holding a rifle. The barrel of the rifle was pointed toward Gutierrez-Medina and Lucero. Appellant said in English that he was going to kill them. Appellant was cussing and said something about "stupid Mexicans."

Appellant got into his truck with the rifle, drove in front of the Gutierrez-Medina house, opened the driver's door, and said something to them before quickly driving away. Gutierrez-Medina told Lucero to stop what she was doing and they both ran into their house. Appellant took the rifle out of his truck and took it into his trailer. Gutierrez-Medina called the sheriff and reported the incident.

Lucero P., who was eight years old at trial, testified that she was in the yard with her mother and sister when appellant started to curse at them while standing in front of his trailer. Appellant was holding a gun and threatened to kill them. Lucero was afraid that appellant was going to kill them. Gutierrez-Medina told Lucero to go into her house with her sister. Appellant got into his truck and drove away fast.

On March 7, 2012, Merced County Sheriff David Verderber came to the Gutierrez-Medina home to begin his investigation, heard what had occurred, and observed a bullet hole in the Gutierrez-Medina truck. Verderber was not able to contact appellant on March 7th. On March 9, 2012, Verderber returned to appellant's trailer with two detectives. Verderber saw appellant leaving his trailer and entering his truck, which had expired registration. Verderber detained appellant. Appellant denied having any weapons in his truck. Verderber found a box containing 75 rounds of .22 caliber ammunition within arm's reach behind the driver's seat.

3.

Appellant eventually admitted he was a convicted felon but did not claim ownership of the ammunition. Appellant consented to a search of his trailer. Appellant admitted he had a .22 caliber bolt-action rifle under his mattress. The rifle was there and was seized.

Appellant further admitted he had a shotgun in a storage unit in Newman. Appellant opened the storage unit and deputies seized a pump-action shotgun. Appellant told deputies he got both weapons from a friend who had passed away. Appellant denied making any threats to the Gutierrez-Medina family. Appellant admitted during questioning that he knew he could not possess firearms as a felon.

Appellant testified that he saw Gutierrez-Medina's husband at his house carrying a shotgun behind his back. On February 26, 2012, appellant saw Gutierrez-Medina's husband with another man outside the house. As appellant drove down the driveway, Gutierrez-Medina's husband picked up a gun and pointed it at appellant. Appellant called the sheriff's department. Two deputies responded to the call, spoke to appellant, and left.

Appellant said that 10 to 15 minutes later the owner of the property drove over, got out of his truck, and told appellant to leave his workers alone. Appellant started to dial 911, but the owner grabbed appellant's cell phone and threw it. The property owner tore appellant's shirt and punched him. Appellant retrieved his cell phone and called the sheriff's department. Deputies arrived, took photographs, and advised appellant to stay away all day.

Appellant is handicapped and can barely walk. Appellant feared for his life so he retrieved the .22 caliber rifle from storage. Appellant said that on March 7, 2012, he yelled at Gutierrez-Medina that he wanted the gun that her husband pointed at him and tried to kill him with. Appellant was not afraid that Gutierrez-Medina or her daughter would try to hurt him. Appellant denied threatening Gutierrez-Medina or her family.

Appellant denied firing his rifle on the property but had heard gunshots on the property. Appellant admitted he possessed the ammunition in his truck and the rifle under his bed.

*Jury Instruction and Closing Argument*

In closing argument to the jury, the prosecutor explained to the jury that count 1 was alleged for appellant's conduct to Gutierrez-Medina and count 2 was alleged for appellant's conduct to Lucero.

The trial court instructed the jury with CALCRIM No. 1300 in relevant part as follows:

> "The defendant is charged in Counts 1 and 2 with having made a criminal threat in violation of Penal Code section 422. [¶] To prove that the defendant is guilty of this crime, the People must prove that:'

> "1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Denise Gutierrez-Medina and/or Lucero [P.];

> "2. The defendant made the threat orally;

> "3. The defendant intended that his statement be understood as a threat and intended that it be communicated to Denise Gutierrez-Medina and/or Lucero [P.];

> "4. The threat was so clear, immediate, unconditional, and specific that it communicated to Denise Gutierrez-Medina and/or Lucero [P.] a serious intention and the immediate prospect that the threat would be carried out;

> "5. The threat actually caused Denise Gutierrez-Medina and/or Lucero [P.] to be in sustained fear for her own safety or for the safety of her immediate family;

> "AND

> "6. Denise Gutierrez-Medina and/or Lucero [P.'s] fear was reasonable under the circumstances."[3]

---

[3]The jury was given a complete set of instructions to refer to during their deliberations. According to the reporter's transcript, the trial court's oral instructions on

The jury was instructed with CALCRIM No. 3515 that each count charged in the case constituted a separate crime and the jury had to consider each count separately and return a separate verdict on each count. The jury was also instructed with CALCRIM No. 3550 in relevant part as follows: "Your verdict on each count must be unanimous. This means that, to return a verdict, all of you must agree to it."

## CRIMINAL-THREAT INSTRUCTION

Appellant contends the trial court denied him his constitutional right to have the jury determine every element of the crime and for the prosecution to prove each element of the crime. This is so, according to appellant, because the trial court modified CALCRIM No. 1300 by inserting the phrase "and/or" when referring to counts 1 and 2, making the language of the instruction ambiguous and thereby lowering the prosecution's burden of proof.[4]

---

CALCRIM No. 1300 state in paragraph 4 of the instructions that the threat had to be "immediate, unconditional, *unspecific*" (italics added). The written instructions say the threat has to be "immediate, unconditional, and specific." We find it very unlikely that the trial court used the work "unspecific." It is more probable that the court instructed the jury that the threat had to be "immediate, unconditional, *and* specific"; the conjunctive "and" would naturally fit in the phrase while being spoken to the jury. We find the word "unspecific" in the reporter's transcript was probably a scrivener's error.

Even if the trial court misspoke, however, the jury was given a copy of the written instructions to use during their deliberations. The word "unspecific" is not used in the written jury instructions.

Finally, the only two questions to the trial court submitted by the jury during deliberations were requests for the read back of testimony of Deputy Verterber and references by the other witnesses to the word gun. The jury apparently had no difficulty understanding the instructions. We conclude that the error in the instruction, if any indeed occurred, is harmless.

[4]There are lengthy arguments by appellant anticipating responses by the People that the issue is waived or constitutes invited error, as well as an assertion that trial counsel was ineffective for failing to object to the instruction. The People, however, do not rely on forfeiture or invited error but focus their argument on the merits of the contention. Because we reject appellant's contentions on the merits, we do not reach the issues of forfeiture, invited error, or ineffective assistance of trial counsel.

Appellant argues that the "and/or" language of the instruction meant that the jury could have found that, although appellant only threatened Gutierrez-Medina, it could still find him guilty of threatening Lucero P. even though the jury did not believe there was evidence that appellant directly threatened Lucero P. Appellant further contends that the error was exacerbated by the trial court's failure to give the jury a unanimity instruction. We reject appellant's contentions.

### *Interpretation of the Phrase And/Or*

The question of whether a challenged instruction accurately conveys the legal requirements of a particular offense is one of law and is independently reviewed de novo on appeal. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) When evaluating on appeal the trial court's instructions to the jury, the instructions should be read and considered as a whole. There is a presumption that jurors of normal intelligence are capable of understanding and following the trial court's instructions. (*People v. Osband* (1996) 13 Cal.4th 622, 714; *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 147-148.)

Further instructions are not required for common, ordinary words that are presumed to be within the understanding of a person of ordinary intelligence. (*People v. Wade* (1995) 39 Cal.App.4th 1487, 1495-1496.) Instructions to the jury are only flawed if there is a reasonable likelihood that the jury misconstrued or misapplied the words of the instruction. (*Id.* at p. 1491; *People v. King* (2010) 183 Cal.App.4th 1281, 1316.) In determining the likelihood that instructions were misconstrued by the jury, we consider the specific language challenged, the instructions as a whole, and the jury's findings. (*People v. Cain* (1995) 10 Cal.4th 1, 36.)

We find the phrase "and/or" as used by the trial court in CALCRIM No. 1300 to have one simple, unambiguous meaning: the jury could find appellant guilty either of making a criminal threat only to Gutierrez-Medina, a threat only to Lucero P., or a threat to both victims. Another way to state the meaning of the phrase is that the jury could find appellant guilty either of count 1 or count 2, or both counts 1 and 2.

7.

In an attempt to construe the prosecution's case on counts 1 and 2 as factually weak, appellant argues that Lucero P.'s testimony was vague and that Gutierrez-Medina's testimony was difficult for the jury to understand because she was not fluent in English. Appellant, in a difficult-to-follow construction of the trial court's instruction, argues at length that the phrase "and/or" used in the instruction would permit the jury to mix and match elements of section 422 for each victim. We disagree with appellant and find the testimony of the two victims to be consistent in important details, and, if believed by the jury, substantial evidence that appellant committed counts 1 and 2.

We find it highly unlikely that the jury would have found that the criminal threat was made only to Gutierrez-Medina, as well as insufficient evidence to sustain each element of section 422 as to Lucero P., yet still return a verdict of guilty on count 2 against Lucero P. merely because the trial court used the phrase "and/or" in CALCRIM No. 1300.

Even if appellant was only directing his threat to Gutierrez-Medina and not to Lucero P., there was substantial evidence that Lucero P. was in fear of serious harm coming to her mother. Whether Lucero P. feared for her own physical safety or her mother's physical safety, there was substantial evidence before the jury to satisfy all of the elements of section 422 for counts 1 and 2. The specific language challenged by appellant is not reasonably susceptible to the construction he gives it, and we reject appellant's argument that the instruction as given to the jury was ambiguous.

Finally, the jury was also instructed with CALCRIM Nos. 3515 and 3550. These instructions explained to the jury that each count was a separate crime, the jury had to consider each count separately, the jury had to return a separate verdict on each count, and the jury's verdict had to be unanimous. Reading the instructions to the jury as a whole, we find there is no reasonable probability that the jury misunderstood the findings it had to make with regard to counts 1 and 2.

8.

*Unanimity Instruction*

Appellant contends the evidence established two discrete acts that could have formed the basis of the Penal Code section 422 criminal-threats conviction and therefore the trial court had a sua sponte duty to instruct the jury with a unanimity instruction. He claims that failure to so instruct the jury was prejudicial error, requiring reversal of the conviction. The People maintain an election was made by the prosecutor in closing argument; therefore, no unanimity instruction was required. The People are correct.

In *People v. Russo* (2001) 25 Cal.4th 1124, the California Supreme Court explained that in a criminal case, the jury's verdict must be unanimous. Additionally, the jury must unanimously agree that the defendant is guilty of a *specific* offense. Cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*Id*. at p. 1132.)

Where multiple acts could constitute a terrorist threat, it is error for the trial court to fail to give the unanimity instruction. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) The alternative to giving the jury a unanimity instruction, however, is for the prosecution to elect a single act for each charge. (*People v. Diaz* (1987) 195 Cal.App.3d 1375, 1381 (*Diaz*).) Here, the prosecutor clearly stated in closing argument to the jury that appellant was guilty in count 1 of threatening Gutierrez-Medina and guilty in count 2 of threatening Lucero P.

Appellant relies on *People v. McNeill* (1980) 112 Cal.App.3d 330, 334-336, for the proposition that where the defendant is charged with assaulting multiple victims in a continuous course of conduct, it is error for the trial court not to give the unanimity instruction. In *McNeill*, however, the defendant was charged with a single count of assault. (*Ibid*.) In contrast to *McNeill*, appellant here was charged with making a criminal threat in two separate counts for each victim. The People did not charge

9.

appellant with a single act of making a criminal threat, and the facts of *McNeill* are inapposite to those in the instant action.

Because of the prosecutor's election of the act upon which a conviction must be based, and because appellant was charged with two separate counts for each victim, we conclude that a more specific unanimity instruction was not necessary. (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292.) Based upon this election, we conclude the trial court did not have a sua sponte duty to give a unanimity instruction. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455; *Diaz, supra,* 195 Cal.App.3d at p. 1383.)

## **DISPOSITION**

The judgment is affirmed.