Filed 10/10/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B266209 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA413158) |
| v. | |
| RAMON ALANIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

Jeffrey J. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne, Andrew S. Pruitt and William Shim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Ramon Alaniz on one count of assault likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).[1] Alaniz moved for a new trial based on juror misconduct. The trial court denied the motion, concluding that although jurors had committed misconduct by discussing Alaniz's failure to testify, the misconduct was not prejudicial. We conclude that because the trial court did not instruct the jury not to consider Alaniz's decision not to testify, no misconduct occurred. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Prosecution's Case*

This case has been tried twice. The first trial ended in a mistrial because the jury was unable to reach a unanimous verdict. At that trial, the court gave the jury CALCRIM No. 355, which instructs the jury that it cannot consider the fact that the defendant did not testify.[2]

At the second trial, Linda Ryan testified that she and Alaniz had a romantic relationship 20 years ago. Beginning in

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    CALCRIM No. 355 provides: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

2012 they lived together in the home of Alaniz's parents.[3]  Ryan testified that she and Alaniz shared the same bedroom, but he was "just a friend" and was not her boyfriend.  In the early morning hours of July 2, 2013, after a full day of drinking with friends in the courtyard outside the house, Alaniz entered the bedroom and asked where his cigarettes and vodka were.  Ryan said that she did not know and began searching for them.

Alaniz yelled at Ryan and hit her in the head three times with a closed fist.  Ryan ran into the hallway; Alaniz followed and grabbed her by the throat.  Ryan struggled free and ran outside; Alaniz again followed, grabbed her by the arm, picked her up, and threw her onto a brick patio.  Ryan landed on something sharp, cutting her leg.

Ryan called 911.  At trial, Ryan could not recall whether she made the call before or after Alaniz threw her suitcases out toward the street.  The police arrived at 2:40 a.m.  Ryan appeared distraught.  Officer Gilbert Pedregon observed marks on Ryan's throat, scratches and bruising on her left arm, and a bloody cut on her right shin.

B.    *Defense Case*

When he was called to testify for the defense, Officer Pedregon stated that Ryan told him that Alaniz had hit her with a closed fist throughout her body, but she did not say that Alaniz had picked her up and thrown her.

Alaniz did not testify.

---

[3]    Ryan testified on direct examination that she moved in with Alaniz in 2013.  On cross-examination she corrected herself by stating that she moved in with him about one year before the incident, in 2012.

C.    *Jury Verdict*

The trial court instructed the jury on a single count of assault likely to produce great bodily injury (§ 245, subd. (a)(4)) and on the lesser included offense of simple assault (§ 240). Unlike at the first trial, however, the court did not instruct the jury that it could not consider the fact that the defendant did not testify. The omission of the instruction appears to have been inadvertent. The court and counsel's discussion of jury instructions occupies less than one page of the reporter's transcript, and no issues were raised.

On January 15, 2014, the jury found Alaniz guilty of one count of assault likely to produce great bodily injury. The trial court found that Alaniz had suffered a prior conviction of a serious and/or violent felony under section 245, subdivision (c).

D.    *New Trial Motion*

Alaniz filed a motion for new trial on grounds of jury misconduct (§ 1181, subd. 3), arguing that the jurors had improperly discussed his failure to testify. In support of the motion, Alaniz submitted a declaration by Juror No. 8, which included the following statements: "During jury deliberations, Mr. Alaniz's failure to testify was discussed by several jurors. [¶] During jury deliberations, I expressed concerns about the reliability and validity of Linda Ryan's testimony. [¶] After I expressed my concerns, a fellow juror responded that the defendant did not even give a story. [¶] Another juror said that 'if someone won't tell their story, it could be they have prior offenses.'" Alaniz did not request an evidentiary hearing. He also did not mention that, unlike at the first trial, the jury that

4

convicted him was not instructed not to consider the fact that he did not testify.

The prosecution argued in opposition that there was no indication that the jury had disregarded the instruction not to consider Alaniz's failure to testify, and any jury misconduct was not prejudicial. Like Alaniz, the prosecution did not mention that the jury was not instructed that it could not consider the fact that Alaniz did not testify.

The trial court found that the juror's declaration was admissible.[4] Like Alaniz and the People, the court did not mention that the jury was not instructed that it could not consider the fact that Alaniz did not testify. Apparently under the misimpression that the jury had been so instructed, the court found that the jurors' discussion of Alaniz's failure to testify violated that instruction and therefore was misconduct. Regarding prejudice, the court stated that the juror's comment that Alaniz might have prior offenses was "slightly more troubling" than the comment that Alaniz did not even give a story. However, the court stated that the comments described in

---

[4] Evidence Code section 1150, subdivision (a), states that evidence of "statements made, or conduct, conditions, or events occurring" that are "likely to have influenced the verdict improperly" are admissible, but "[n]o evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." This means that evidence of ""'overt acts, objectively ascertainable'"" is admissible, but evidence of ""'the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved,'"" is inadmissible. (*People v. Collins* (2010) 49 Cal.4th 175, 249.)

the juror's declaration did not "suggest that any juror actually considered any of these issues in their deliberations. . . . And I do not believe that based upon this declaration standing alone that there is sufficient evidence to believe that the defendant suffered any prejudice from this comment . . . ." The court therefore denied the new trial motion.

E. *Sentencing*

On June 26, 2015, the trial court sentenced Alaniz to six years in prison, consisting of the middle term of three years doubled pursuant to the three strikes law (§§ 667, subds. (b)-(i), 1170.12).

## DISCUSSION

A defendant in a criminal trial has a right established by the Fifth Amendment to the United States Constitution not to testify. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1424.) Upon request, a defendant is entitled to an instruction that the jury may not consider or discuss the defendant's failure to testify (*id.* at pp. 1424-1425), but the trial court has no obligation to give such an instruction sua sponte (*People v. Holt* (1997) 15 Cal.4th 619, 687; see also *Carter v. Kentucky* (1981) 450 U.S. 288, 300 [101 S.Ct. 1112, 67 L.Ed.2d 241]). "[T]he purpose of the rule prohibiting jury discussion of a defendant's failure to testify is to prevent the jury from drawing adverse inferences against the defendant, in violation of the constitutional right not to incriminate oneself." (*Leonard*, at p. 1425.) A jury that discusses the defendant's failure to testify in violation of such an

instruction commits misconduct. (*People v. Lavender* (2014) 60 Cal.4th 679, 686-687; *Leonard*, at p. 1425.)

In his opening brief on appeal, Alaniz assumes, as he did in his new trial motion, that the trial court instructed the jury not to consider his failure to testify. The People point out that the assumption is false and argue that because the jury was not instructed not to consider Alaniz's failure to testify, the jurors' discussion of that issue did not constitute misconduct. In his reply brief, Alaniz concedes that the instruction was not given but argues that (1) the jurors' discussion violated CALCRIM Nos. 200, 201, and 222, which instructed the jurors to base their decision on the evidence and not to conduct their own investigation of the facts or the law, and (2) the People's position "is not defensible" because it would mean that whenever defense counsel makes a tactical decision not to have the jury instructed with CALCRIM No. 355, "it is proper for the jury to discuss the lack of testimony by the defendant and draw adverse consequences therefrom."

Alaniz's first argument lacks merit. It is firmly established that in general both the defense and, in appropriate circumstances, the prosecution may make arguments to the jury based on the failure of the opposing party to present evidence. (See *People v. Thomas* (2012) 54 Cal.4th 908, 945; *People v. Brady* (2010) 50 Cal.4th 547, 565-566; *People v. Lewis* (2009) 46 Cal.4th 1255, 1304; *People v. Brown* (2003) 31 Cal.4th 518, 554; *People v. Hughes* (2002) 27 Cal.4th 287, 372; *People v. Bradford* (1997) 15 Cal.4th 1229, 1340; *People v. Miller* (1990) 50 Cal.3d 954, 996; *People v. Vargas* (1973) 9 Cal.3d 470, 475-476 ["It is now well established that although *Griffin*[ *v. California* (1965) 380 U.S. 609 (85 S.Ct. 1229, 14 L.Ed.2d 106)] prohibits reference to a

defendant's failure to take the stand in his own defense, that rule 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses'"]; *People v. Gaulden* (1974) 36 Cal.App.3d 942, 954.) The jury's consideration of the absence of evidence, including the failure to call logical witnesses, is consistent with the jury instruction to consider only the evidence introduced at trial (CALCRIM Nos. 200, 222), the instruction not to conduct an independent investigation of the facts (CALCRIM No. 201), and the instruction on the presumption of innocence and the burden of proof (CALCRIM No. 220). (See *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1117-1119; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1237-1240; *People v. Guerrero* (2007) 155 Cal.App.4th 1264, 1268-1269.)

Here, the jurors' comments concerning Alaniz's decision not to testify do not show that the jurors conducted their own investigation or based their decision on anything other than the evidence introduced at trial. The evidence reflected that Alaniz did not testify, and that is what the jurors discussed. And given that, in general, a jury's consideration of the defense's failure to call logical witnesses is proper and does not impermissibly shift the burden of proof, the jury's consideration of Alaniz's failure to testify likewise cannot have impermissibly shifted the burden of proof—he was a logical witness, so the same rule should apply. His right to hold the prosecution to its burden of proving him guilty beyond a reasonable doubt was not violated.

Alaniz's second argument lacks merit as well, because the People's position is defensible. Alaniz had the right to have the jury instructed, *upon his request*, not to consider his decision not to testify. He made no such request (apparently through

inadvertence), and the jury was not so instructed.  Having failed to exercise his right to such an instruction, he cannot now complain of the jury's failure to follow it.

We have found no authority for the proposition that conduct by a juror that does not violate any of the instructions that were given may nonetheless constitute misconduct.  There are cases that discuss misconduct without specifically identifying a relevant instruction, but they all appear to involve conduct that is prohibited by various mandatory instructions.  (See, e.g., *People v. Brooks* (2017) 3 Cal.5th 1, 97-100 [juror was exposed to outside information]; *People v. Tafoya* (2007) 42 Cal.4th 147, 190-193 [juror conversed with a priest]; *People v. Williams* (2006) 40 Cal.4th 287, 330-336 [juror read aloud from the Bible]; *Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 682-684 [juror discussed outside information].)

Despite the lack of authority, however, we find it reasonable to assume that it is in principle possible for a juror to commit misconduct without violating any instruction.  A juror who physically assaults other jurors who disagree with him, for example, is presumably guilty of misconduct even if no instruction expressly or implicitly prohibits such conduct.  Any lay juror should know that violence is not an acceptable method of conducting jury deliberations, regardless of whether there is an instruction on point.

But the assumption that it is in principle possible for a juror to commit misconduct without violating an instruction is of no aid to Alaniz.  In the absence of an appropriate instruction, lay jurors cannot be expected to know that although in general it is perfectly permissible for them to consider the failure of the defense to call logical witnesses to testify, it is absolutely

impermissible for them to consider *the defendant's* failure to testify. That is the kind of technical legal rule that lay jurors cannot reasonably be expected to understand and follow unless they are instructed on it.

For all of these reasons, we must reject Alaniz's argument that the People's position "is not defensible." Under existing law, it is not only defensible but correct.

Again, the trial court has no sua sponte duty to instruct the jury that it cannot consider the defendant's failure to testify. The case law indicates that the reason for that rule is that the defense may prefer to forgo such an instruction in order to avoid drawing the jury's attention to the defendant's failure to testify. (See, e.g., *People v. Gardner* (1969) 71 Cal.2d 843, 854 [the instruction "point[s] up to the jury the defendant's failure to testify"]; *People v. Horrigan* (1967) 253 Cal.App.2d 519, 522 [when the instruction is given, "[t]he jury, not otherwise focused [on the defendant's failure to testify], is so directed to it by the instruction"].) On that basis, the Supreme Court has observed that "[w]hether or not it is to the defendant's advantage to have the instruction given manifestly is debatable." (*Gardner*, at p. 854.)

We agree that such considerations weigh in favor of allowing the defense the tactical flexibility to accept or reject the instruction. But that does not settle the question of what the default rule should be in the absence of any express election by the defense. That is, should the instruction be mandatory *only upon request by the defense*, or should it be mandatory *absent objection by the defense*? We have found no discussion of this issue in the case law and no scholarly commentary on it. The latter approach—that the instruction be mandatory unless the defense objects—would seem to provide more robust protection of

10

defendants' Fifth Amendment rights.  But at present it is not the law.

Because we conclude that Alaniz has not shown that the jurors engaged in misconduct, we need not consider whether the alleged misconduct was prejudicial.  The trial court did not err in denying the motion for new trial.[5]

---

[5]    Here, defendant moved for a new trial solely on the ground of juror misconduct.  As discussed, there was none.  Nonetheless, the trial court's constitutional duty to ensure that defendants are accorded due process of law provides the court with the authority to grant a new trial when the defendant did not receive a fair trial even though the cause of that unfairness is not expressly recognized as a ground for granting a new trial under section 1181.  (See *People v. Fosselman* (1983) 33 Cal.3d 572, 582-583 [ineffective assistance of defense counsel]; *People v. Drake* (1992) 6 Cal.App.4th 92, 97-98 [prosecution withheld identity of a favorable defense witness].)  Accordingly, even though lay jurors may not know it is impermissible to consider the defendant's failure to testify in the absence of an appropriate instruction, when a proper motion has been made, a defendant may be entitled to a new trial if he or she can establish by admissible evidence that an extended discussion of the defendant's decision not to testify occurred during deliberations and likely affected the verdict.  What constitutes such a significant discussion of a defendant's silence as to violate the defendant's due process right to a fair trial must be considered on a case-by-case basis.

## DISPOSITION

The judgment is affirmed.

MENETREZ, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.